KAHN, J.
J.R., a juvenile, appeals his adjudication of delinquency, claiming first that the trial *366 court improperly denied his motion for a continuance and, second, that the evidence at trial was insufficient to support the trial court’s findings of fact. We need not reach the first issue because we agree with appellant as to the second; accordingly, we reverse appellant’s adjudication of delinquency.

BACKGROUND

The State originally charged J.R., then fifteen, with aggravated assault with a deadly weapon pursuant to section 784.021(l)(a), Florida Statutes (2006), alleging he held a knife to his then-seventeen-year-old girlfriend’s throat during a late-night quarrel in April 2007. The State amended the delinquency petition shortly before trial to charge appellant with improperly exhibiting a dangerous weapon pursuant to section 790.10, Florida Statutes (2006). At trial, the State’s two eyewitnesses-appellant’s younger sister and the victim herself (the mother of appellant’s two-year-old daughter) — apparently receded from their earlier statements to law enforcement and testified that although appellant wielded a knife during the episode, they could not recall the knife’s appearance, characteristics, or dimensions. The victim also testified that appellant did not, as she first told police, hold the knife to her throat and that she was not afraid during the episode. This testimony led the State to drop the charge of aggravated, assault. Investigators apparently never found the knife.
After a bench trial (and an impromptu post-trial research session at the judge’s behest to uncover cases interpreting the term “dangerous weapon” in section 790.10), the trial court found appellant guilty of improper exhibition of a dangerous weapon and sentenced him to a moderate-risk residential program, with one year of probation to follow.

ANALYSIS

The State bore the burden at trial of presenting competent, substantial evidence that appellant violated section 790.10 by exhibiting a “dirk, sword, sword cane, firearm, electric weapon or device, or other weapon ... in the presence of one or more persons ... in a rude, careless, angry, or threatening manner.” § 790.10, Fla. Stat. (2006). “Weapon” means “any dirk, knife, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife, plastic knife, or blunt-bladed table knife.” § 790.001(13), Fla. Stat. (2006).
The state supreme court held in L.B. v. State that a pocketknife with a blade three and three-quarters of an inch long constitutes a “common pocketknife” under section 790.001(13), but the court also observed in a footnote that, in so ruling, it did not intend to suggest “that four inches is a bright line cutoff for determining whether a particular knife is a ‘common pocketknife.’” 700 So.2d 370, 373 n. 4 (Fla.1997). Instead, the court held “merely ... that appellant’s knife fits within the exception to the definition of weapon found in section 790.001(13).” Id.
Whether a weapon of ascertainable characteristics is, in a given case, a “dangerous weapon” for the purpose of the improper exhibition statute constitutes a factual question which should be scrupulously reserved for the factfinder. See, e.g., Walls v. State, 730 So.2d 294, 294-95 (Fla. 1st DCA 1999) (reserving for jury the question whether an open and locked pocketknife with a four-inch blade constituted a dangerous weapon in the post-L.N regime); Bell v. State, 673 So.2d 556, 557 (Fla. 1st DCA 1996) (holding that whether defendant’s knife was a “weapon” pursuant to section 790.001(13) was a “jury ques *367 tion ); Bass v. State, 232 So.2d 25, 27 (Fla. 1st DCA 1970) (holding that whether a weapon is “deadly” under the aggravated assault statute is a question for the fact-finder); State v. Nixon, 295 So.2d 121, 122 (Fla. 3d DCA 1974) (noting that “[i]t is common knowledge that in certain circles pocket knives are used by assailants with deadly weapon effect as frequently, if not more frequently than are firearms,” and holding that whether or not a pocketknife is a deadly weapon in a particular case is a question for the jury.)
In the present case, no evidence described appellant’s knife, other than testimony that it existed. The knife was never found, and neither of the State’s eyewitnesses remembered anything about the knife’s appearance, characteristics, or dimensions. Indeed, considered in a light most favorable to the State, the evidence fails to remove the knife from any of the statutory exceptions listed in the definition of “weapon” in section 790.001(13) except that of a firearm. No evidence suggests— nor may we infer — that the knife in this case was not, in fact, a “plastic knife” or “blunt-bladed table knife,” and no evidence provides a metric by which the trial court could have determined whether the knife was a “common pocketknife.” See § 790.001(13), Fla. Stat. (2006).
Furthermore, the victim testified that appellant did not hold the knife to her throat, a contradiction, to be sure, of both her earlier statements and appellant’s own statement to police upon his arrest. Appellant’s young sister, who witnessed the outdoor argument through a window from inside the home, testified that she could not see the knife during the argument— that “it was either on the neck or the arm.” In the absence of a description of the knife and evidence sufficiently describing the manner in which appellant wielded it, we conclude the State presented no evidence by which the trial judge could possibly have found the knife constituted a “dangerous weapon” which appellant exhibited “in a rude, careless, angry, or threatening manner.” See § 790.10, Fla. Stat. (2006).
For this reason, appellant was entitled to judgment of acquittal. We REVERSE the adjudication of appellant’s delinquency and order that he be discharged.
PADOVANO and HAWKES, JJ., concur.